**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MONSTER ENERGY COMPANY,

    Plaintiff,

v.

COOLKID STORE, et al.,

    Defendants.

Case No. 20-cv-01058

**Judge Jorge L. Alonso**

**Magistrate Judge Gabriel A. Fuentes**

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT**

Plaintiff Monster Energy Company ("MEC") submits the following memorandum in support of its Motion for Entry of Default and Default Judgment against the defendants identified on Schedule A to the Amended Complaint (collectively, the "Defaulting Defendants").

## STATEMENT OF FACTS

MEC is a nationwide leader in the business of developing, marketing, and selling beverages, including energy drinks. Amended Complaint [31] at ¶ 5. MEC is the owner of numerous trademark registrations for its MONSTER ENERGY and Claw Icon Marks, including, but not limited to, several United States Registrations (collectively, the "MONSTER ENERGY Trademarks"). *Id*. at ¶ 14. In addition, MEC is the owner of federally registered Copyright Registration No. VA 1-789-900, and the corresponding supplemental registration changing ownership name from Hansen Beverages Company to Monster Energy Company: VA 1-433-242 (the "Monster Energy Copyrighted Design"). *Id.* at ¶ 21. Additional factual assertions regarding MEC in Paragraphs 4 – 22 of the Amended Complaint are incorporated herein. *Id*. at ¶¶ 4–22.

Defaulting Defendants are individuals and business entities of unknown makeup who, either individually or jointly, own and/or operate one or more of the e-commerce stores under at least the seller aliases identified in Schedule A to the Amended Complaint (collectively, the "Seller Aliases"). *Id*. at ¶ 23. Defaulting Defendants target sales to Illinois residents by setting up and operating e-commerce stores that target U.S. consumers using one or more Seller Aliases, offer shipping to the U.S., including Illinois, accept payment in U.S. dollars, and has offered for sale and/or sold unauthorized and unlicensed products using infringing and counterfeit versions of MEC's trademarks, unauthorized copies of MEC's federally registered copyrighted designs, or both (collectively, the "Unauthorized Monster Energy Products") to residents of Illinois. *Id*.

at ¶ 27.  Additional factual assertions regarding to Defaulting Defendants in Paragraphs 23 – 35 of the Amended Complaint are incorporated herein.  *Id.* at ¶¶ 23-35.

MEC filed this action on February 13, 2020 [1], and subsequently filed an Amended Complaint [31].  On February 20, 2020, this Court granted MEC's *Ex Parte* Motion for Entry of a Temporary Restraining Order (the "TRO"), subsequently extended the TRO [30], and converted the TRO [24] to a Preliminary Injunction [47].  Paragraph 9 of the TRO permitted MEC to complete service of process to Defendants electronic publication on a website to which the Domain Names which were transferred to MEC's control redirect, or by sending an e-mail to the e-mail addresses identified in Exhibits 3 and 4 to the Declaration of Bruce Kingsland.  [24] at ¶ 9.  The Defendants were properly served on March 16, 2020.  [34].  None of the Defaulting Defendants have filed an answer or otherwise pled in this action.  *See* Declaration of Justin R. Gaudio (the "Gaudio Declaration") at ¶ 2.

Pursuant to Federal Rule of Civil Procedure 55(a) and (b)(2), MEC now moves this Court for an Order entering default and default judgment finding that Defaulting Defendants are liable on all counts of MEC's Amended Complaint.  MEC further seeks an award of statutory damages against each of the Defaulting Defendants as authorized by 15 U.S.C. § 1117(c)(2) for willful trademark counterfeiting and as authorized by 17 U.S.C. § 504(c)(2) for willful infringement of the Monster Energy Copyrighted Design.  MEC also seeks entry of a permanent injunction prohibiting Defaulting Defendants from selling Unauthorized Monster Energy Products, using the MONSTER ENERGY Trademarks without authorization, and reproducing, distributing copies of, making derivative works of, or publicly displaying the Monster Energy Copyrighted Design, an Order that the domain names used by Defaulting Defendants to sell such products be permanently transferred to MEC, and that all assets in Defaulting Defendants' financial accounts,

including those operated by PayPal, Inc. ("PayPal"), AliPay, Amazon and Wish.com, as well as any newly discovered assets, be transferred to MEC.

## ARGUMENT

I.      **JURISDICTION AND VENUE ARE PROPER IN THIS COURT**

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the Copyright Act, 17 U.S.C. § 101, *et seq.*, 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in Illinois and causes harm to MEC's business within this Judicial District. See [31] at ¶¶ 2, 27, 34 and 35; *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423-24 (7th Cir. 2010) (without benefit of an evidentiary hearing, plaintiff bears only the burden of making a *prima facie* case for personal jurisdiction; all of plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor).

Through at least the fully interactive, e-commerce stores operating under the Seller Aliases, Defaulting Defendants have targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois and, on information and belief, have sold Unauthorized Monster Energy Products to residents of Illinois. [31] at ¶ 2. Personal jurisdiction exists over Defaulting Defendants since they directly target their business activities toward consumers in the United States, including Illinois. Specifically, Defaulting Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold

3

Unauthorized Monster Energy Products to residents of Illinois. *Id.* *See, Monster Energy Co. v. Chen Wensheng, et al.,* 2015 U.S. Dist. LEXIS 132283, at *11 (N.D. Ill. Sept. 29, 2015).

**II.     MEC HAS MET THE REQUIREMENTS FOR ENTRY OF DEFAULT**

Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). On March 13, 2020, MEC filed its Amended Complaint alleging federal trademark infringement and counterfeiting, 15 U.S.C. § 1114 (Count I), false designation of origin, 15 U.S.C. § 1125(a) (Count II), and copyright infringement, 17 U.S.C. §§ 106 and 501 (Count III). [31]. The Defendants were properly served with the Amended Complaint on March 13, 2020. [34]. Despite having been served with process, none of the Defaulting Defendants have filed an answer or otherwise pled in this action. Gaudio Declaration at ¶ 2. Upon information and belief, the Defaulting Defendants are not active-duty members of the U.S. armed forces. *Id.* at ¶ 3. Accordingly, MEC asks for entry of default against the Defaulting Defendants.

**III.    MEC HAS MET THE REQUIREMENTS FOR ENTRY OF DEFAULT JUDGMENT**

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides for a court-ordered default judgment. A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in the complaint. *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989). When the Court determines that a defendant is in default, the factual allegations of the complaint are taken as true and may not be challenged, and the defendants are liable as a matter of law as to each cause of action alleged in the complaint. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994).

As noted above, MEC served Defendants on March 16, 2020. [34]. The answer period has passed, and no answer or other responsive pleading has been filed by any of the Defaulting Defendants. *See* Fed. R. Civ. P. 12(a)(1)(A). Accordingly, default judgment is appropriate, and consistent with previous similar cases in front of this Court, MEC requests an award of statutory damages as authorized by 15 U.S.C. § 1117(c)(2) for willful trademark counterfeiting against each of the Defaulting Defendants for use of counterfeit MONSTER ENERGY Trademarks, and by 17 U.S.C. § 504(c)(2) for willful infringement of the Monster Energy Copyrighted Design on products sold through the e-commerce stores operating under the Seller Aliases. MEC also seeks entry of a permanent injunction prohibiting Defaulting Defendants from selling Unauthorized Monster Energy Products, using the MONSTER ENERGY Trademarks without authorization, and reproducing, distributing copies of, making derivative works of, or publicly displaying the Monster Energy Copyrighted Design, an order that domain names used by Defaulting Defendants to sell such products be permanently transferred to MEC, and that all assets in Defaulting Defendants' financial accounts, including those operated by PayPal, AliPay, Amazon and Wish.com, and any newly identified accounts be transferred to MEC.

### A. Trademark Infringement and Counterfeiting, and False Designation of Origin

To properly plead a claim of trademark infringement and counterfeiting pursuant to the Lanham Act, a plaintiff must allege that (1) its mark is distinctive enough to be worthy of protection, (2) defendants are not authorized to use the mark; and (3) defendant's use of the mark causes a likelihood of confusion as to the origin or sponsorship of defendant's products. *See Bliss Salon Day Spa v. Bliss World LLC,* 268 F.3d 494, 496-97 (7th Cir. 2001).

MEC alleged in its Amended Complaint that its MONSTER ENERGY Trademarks are highly distinctive marks, that Defaulting Defendants have sold, offered to sell, marketed,

5

distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the MONSTER ENERGY Trademarks, that Defaulting Defendants have knowledge of MEC's rights in the MONSTER ENERGY Trademarks, that Defaulting Defendants are not authorized to use the MONSTER ENERGY Trademarks, and that Defaulting Defendants' use of the MONSTER ENERGY Trademarks causes a likelihood of confusion. [31] at ¶¶ 37-39. MEC alleged in its Amended Complaint that Defaulting Defendants are using the MONSTER ENERGY Trademarks on the Unauthorized Monster Energy Products. [31] at ¶ 45. This creates a likelihood of confusion, mistake, and deception among the general public as to the affiliation or sponsorship of Defaulting Defendants' Unauthorized Monster Energy Products with MEC's Monster Energy Products. *Id.* at ¶ 44.

Since the Defaulting Defendants have failed to answer or otherwise plead in this matter, the Court must accept the allegations contained in MEC's Amended Complaint as true. *See* Fed. R. Civ. P. 8(b)(6); *Am. Taxi Dispatch, Inc., v. Am. Metro Taxi & Limo Co.,* 582 F. Supp. 2d 999, 1004 (N.D. Ill. 2008). Accordingly, MEC requests entry of judgment with respect to Counts I and II for willful trademark infringement and counterfeiting of the MONSTER ENERGY Trademarks and willful false designation of origin, against the Defaulting Defendants.

    **B.**    **Copyright Infringement of Copyright Registration No. VA 1-789-900 and Supplemental Copyright Registration VA 1-433-242.**

The United States Copyright Act provides that "[a]nyone who violates any of the exclusive rights of the copyright owner … is an infringer of the copyright." 17 U.S.C. § 501. Among these exclusive rights granted to MEC under the Copyright Act are the exclusive rights to reproduce, prepare derivative works, distribute copies of, and display the Monster Energy Copyrighted Design to the public. 17 U.S.C. § 106.

To establish a claim for copyright infringement, a plaintiff must show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007) (internal citations omitted). MEC alleged in its Amended Complaint that MEC is the owner of valid, enforceable and federally registered Monster Energy Copyrighted Design. [31] at ¶¶ 49, 50. MEC further alleged that Defaulting Defendants have deliberately copied, displayed, distributed, reproduced and/or made derivate works incorporating the Monster Energy Copyrighted Design on the Defendant Internet Stores and the corresponding Unauthorized Monster Energy Products in violation of 17 U.S.C. §§ 106(1)-(3), (5). [31] at ¶¶ 52. MEC, therefore, requests entry of judgment with respect to Count III for willful copyright infringement of the Monster Energy Copyrighted Design.

## IV.   MEC IS ENTITLED TO A STATUTORY DAMAGES AWARD

### A. Statutory Damages Are Appropriate in this Case

Pursuant to the statutory damages provision of the Lanham Act, 15 U.S.C. § 1117(c), a plaintiff in a case involving the use of a counterfeit mark may elect to receive "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). When the counterfeiting is found to be willful, 15 U.S.C. § 1117(c)(2) provides for statutory damages of up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2).

The lack of information regarding Defaulting Defendants' sales and profits makes statutory damages particularly appropriate for default cases like the instant case. *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, *9*, (N.D. Ill. 2004) (citing S. Rep. No. 177, 104th Cong. 1995). Likewise, Courts have recognized that statutory damages should be awarded

without requiring an evidentiary hearing. *See Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*, 2008 U.S. Dist. LEXIS 31761, *11 (N.D. Ill. Apr. 17, 2008).

### B. A Statutory Damages Award Is Warranted

Although 15 U.S.C. § 1117(c) contains the dollar range for possible statutory damage awards, the only guidance provided by the statute for how to determine a damage award within the statutory dollar range is "as the court considers just." 15 U.S.C. § 1117(c). Courts interpreting 15 U.S.C. § 1117(c) have analogized case law applying the statutory damage provision of the Copyright Act contained in 17 U.S.C. § 504(c). *See Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, *10; *Luxottica USA LLC v. The Partnerships, et al.,* 2015 U.S. Dist. LEXIS 78961, *5 (N.D. Ill. 2015).

The Seventh Circuit's standard for awarding statutory damages for copyright infringement under 17 U.S.C § 504(c) is articulated in *Chi-Boy Music v. Charlie Club*, 930 F.2d 1224, 1229 (7th Cir. 1991). Under the *Chi-Boy* standard, a court awarding statutory damages is "not required to follow any rigid formula," but instead "enjoys wide discretion." *Id*. In computing the award amount, a court may consider factors such as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent." *Id*. Courts in this district have also considered the significant value of a plaintiff's brand and the efforts taken to protect, promote and enhance that brand in determining the appropriate dollar figure for the award. *Lorillard Tobacco Co.,* 2004 U.S. Dist. LEXIS 22563, *16.

In addition, courts have awarded significant damage amounts where a defendant's counterfeiting activities attracted wide market exposure through Internet traffic or advertisement. *See Coach, Inc. v. Ocean Point Gifts*, 2010 U.S. Dist. LEXIS 59003, *15-16 (D.N.J. Jun. 14,

8

2010) (significant damage awards in counterfeit cases were "due in part to the wide market exposure that the Internet can provide"); *Burberry Ltd. v. Designers Imports, Inc.*, 2010 U.S. Dist. LEXIS 3605, *28-29 (S.D.N.Y. Jan. 19, 2010) (damages amount based, in part, on "Defendant's ability to reach a vast customer base through internet advertising").

In similar cases involving willful Internet-based counterfeiting, courts have awarded statutory damages, including up to the maximum provided by law, to the plaintiff to serve the purposes of: (1) deterring the defendant and others situated like him from bringing into commerce counterfeit goods, (2) compensating the plaintiff for damages caused by defendant's infringement, and (3) punishing the defendant appropriately for his counterfeiting activities. *See, e.g., Burberry Limited, et al. v. XIE JI PING, et al,* No. 18-cv-07442 (N.D. Ill. Jan. 15, 2019) (unpublished) (Docket Nos. 42 and 43) (awarding $1,000,000 in statutory damages per defendant); *NBA Properties, Inc., et al. v. YU ZICHENG, et al.*, 19-cv-04412 (N.D. Ill. Oct. 8, 2019) (unpublished) (Docket Nos. 60 and 61) (awarding $500,000 in statutory damages per defendant); *H-D U.S.A., LLC v. DLLL, et al.,* No. 19-cv-07629 (N.D. Ill. Feb. 18, 2020) (unpublished) (Docket Nos. 64 and 65) (same). Given the Court's clear discretion in determining the appropriate amount of the statutory damages award within the statutory limits of 15 U.S.C. § 1117(c), and the facts specific to this case, MEC respectfully requests the Court's entry of an award of two hundred thousand dollars ($200,000) per Defaulting Defendant.

    i.    <u>Defaulting Defendants' Willful Counterfeiting Supports the Requested Award</u>

Defaulting Defendants' counterfeiting was willful and, therefore, at a minimum, warrants the requested statutory damages award. "Willful infringement may be attributed to the defendant's actions where he had knowledge that his conduct constituted infringement or where he showed a reckless disregard for the owner's rights." *Lorillard Tobacco Co. v. S & M Cent. Serv. Corp.,* 2004 LEXIS 22563, *19-20 (N.D. Ill. Feb. 25, 2005). Knowledge need not be

9

proven directly, but can be inferred from a defendant's conduct. *Id.* at 20. As alleged in MEC's Amended Complaint, Defaulting Defendants facilitated sales by designing the e-commerce stores so that they appeared to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. [31] at ¶ 28. As such, Defaulting Defendants clearly had knowledge that their activities constituted infringement or at least a reckless disregard for MEC's rights in the MONSTER ENERGY Trademarks. [31] at ¶¶ 29-32; *see also* [15], [16]. Finally, District Courts have deemed counterfeiting willful when defendants default. *See Burberry Limited, et al. v. The Partnerships, et al,* No. 14-cv-08220 (N.D. Ill. Dec. 11, 2014) (unpublished) (Docket Nos. 44 and 45); *Oakley, Inc. v. The Partnerships, et al.,* No. 13-cv-02958 (N.D. Ill. June 17, 2013) (unpublished) (Docket Nos. 36 and 37).

    ii.    <u>The Value of the MONSTER ENERGY Trademarks and MEC's Efforts to Promote, Protect and Enhance its Brand Justify the Requested Award</u>

In determining an appropriate statutory damage award, this Court should be guided by the *Lorillard* case and consider the "significant value of [the brand] and the efforts taken to protect, promote and enhance [that brand]." *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, at *16. MEC has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the MONSTER ENERGY Trademarks. [14] at ¶ 10. Thus, the requested statutory damages award should be given favorable consideration in view of the value of the MEC brand and the extensive steps being taken by MEC to protect, promote and enhance it. *See Monster Energy Company*, 2015 U.S. Dist. LEXIS 86956, at *11; *Luxottica USA LLC v. The Partnerships, et al.*, 2015 U.S. Dist. LEXIS 78961, at *7-8 (N.D. Ill. June 18, 2015).

    iii.    <u>Defaulting Defendant's Wide Exposure over the Internet Merits the Requested Award</u>

Defendants who operate online attract wide market exposure through Internet traffic and/or advertisement. Defaulting Defendants' wide market exposure over the Internet warrants

the requested statutory damages award. *See H-D U.S.A., LLC v. Guangzhou Tomas Crafts Co., et al.*, 2017 U.S. Dist. LEXIS 207613 (N.D. Ill. Dec. 18, 2017) (awarding $150,000 in statutory damages, noting "the fact that defendant's counterfeiting took place online favors a higher statutory damages award because online counterfeiting can reach a much wider audience than counterfeiting through a physical store."); *Luxottica USA LLC v. The Partnerships, et al.*, 2017 U.S. Dist. LEXIS 29999, at *11-12 (Mar. 2, 2017 N.D. Ill.) (summary judgment and awarding $100,000 in statutory damages "because [defendant] advertised [counterfeit goods] on the internet, allowing for distribution far greater than if it sold the hats in a brick-and-mortar store.").

      iv.   <u>The Requested Statutory Damages Award Must Sufficiently Deter Defaulting Defendants and Similar Online Counterfeit Sellers</u>

The remedy imposed must provide a sufficient deterrent effect to ensure that the guilty party will not engage in further infringing conduct. *Sands, Taylor & Wood,* 34 F.3d at 1348. In *Phillip Morris USA Inc. v. Marlboro Express*, the Court stated that due to "the size of the potential profit given the quantities of [counterfeit goods] involved, and the need for a substantial deterrent to future misconduct by defendants and other counterfeit traffickers ... plaintiff is entitled to the maximum statutory award under 15 U.S.C. § 1117(c)(2)." 2005 U.S. Dist. LEXIS 40359, at *28 (E.D.N.Y. Aug. 26, 2005). *See also Luxottica USA LLC v. The Partnerships, et al.*, 2015 U.S. Dist. LEXIS 78961, at *8.

To reach global consumers, counterfeiters advertise, offer for sale, and sell their products via social media platforms and popular e-commerce sites. In the 2018 fiscal year alone, U.S. government seizures of counterfeit goods totaled more than $1.3 billion MSRP. [13-1]. China and Hong Kong remained the primary sources of counterfeit and pirated goods seized, accounting for more than 87 percent of all seizures. *Id*. Additionally, a February 2017 report commissioned by Business Action to Stop Counterfeiting and Piracy (BASCAP) and the

11

International Trademark Association (INTA) titled *The Economic Impacts of Counterfeiting and Piracy* included findings that counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs. [13-3]. As such, the requested statutory damages award is necessary to deter both Defendants and other similarly situated online sellers.

V.    **MEC IS ENTITLED TO STATUTORY DAMAGES FOR COPYRIGHT INFRINGEMENT**

Pursuant to the statutory damages provision of the Copyright Act, 17 U.S.C. § 504(c), a plaintiff in a case involving copyright infringement may elect to receive statutory damages of "not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). When the copyright infringement is found to be willful, 17 U.S.C. § 504(c)(2) provides for statutory damages "to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2).

The Seventh Circuit's standard for awarding statutory damages for copyright infringement under 17 U.S.C § 504(c) is articulated in *Chi-Boy Music v. Charlie Club*, 930 F.2d 1224, 1229 (7th Cir. 1991). Further, in the Seventh Circuit, infringing conduct is willful where the defendant knows that his conduct constitutes infringement or where he shows reckless disregard of the copyright owner's rights. *See Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 511 (7th Cir. 1994). As such, knowledge need not be proven directly, but can be inferred from a defendant's conduct. *In re Aimster Copyright Litigation*, 334 F.3d 643, 650 (7th Cir. 2003) (Finding that "[w]illful blindness is knowledge, in copyright law").

In this case, Defaulting Defendants clearly had knowledge that their activities constituted infringement or at least a reckless disregard for MEC's rights in the Monster Energy Copyrighted Design. Additionally, in similar cases involving willful copyright infringement, courts have awarded significant damages. *See Monster Energy Company v. Chen Wensheng, et al.,* No. 1:15-cv-4166 (N.D. Ill. Jul. 27, 2015) (unpublished) (Docket No. 85) (awarding $50,000 in

12

statutory damages per defendant for willful copyright infringement); *Monster Energy Company v. Zhao Min, et al.;* No. 1:15-cv-9142 (N.D. Ill. Dec. 12, 2015) (unpublished) (Docket No. 46) (awarding $25,000 in statutory damages per defendant for willful copyright infringement); *Monster Energy Company v. Xianda Lin, et al.;* No. 1:16-cv-0622 (N.D. Ill. Mar. 14, 2016) (unpublished) (Docket No. 51) (awarding $150,000 in statutory damages per defendant for willful copyright infringement). Thus, MEC's request for a statutory damages award in the amount of one hundred thousand dollars ($100,000) per Defaulting Defendant for willful copyright infringement of the Monster Energy Copyrighted Design is appropriate.

## VI. MEC IS ENTITLED TO PERMANENT INJUNCTIVE RELIEF

In addition to the foregoing relief, MEC respectfully requests entry of a permanent injunction enjoining Defaulting Defendants from infringing or otherwise violating MEC's rights in the MONSTER ENERGY Trademarks and the Monster Energy Copyrighted Design. For permanent injunctive relief, MEC must establish "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be dissemed by a permanent injunction." *MetroPCS v. Devor*, 215 F. Supp. 3d 626, 639 (N.D. Ill. 2016).

### A. MEC Does Not Have an Adequate Remedy At Law and Will Suffer an Irreparable Injury Should Defaulting Defendants' Actions Not Be Enjoined.

"[I]t is well-established in the Seventh Circuit that irreparable harm and inadequate remedy at law are presumed in trademark and trade dress infringement cases." *MetroPCS*, 215 F. Supp. 3d at 639. "Noo adequate remedy at law exists because absent permanent injunctive relief, [Plaintiff] would be forced to repeatedly file suit any time Defendants, who have shown

13

complete disregard for their legal obligations and the jurisdiction of this Court, infringe Plaintiff's trademark rights in the future." *MetroPCS*, 215 F. Supp. 3d at 639.

Even absent any presumption, the Seventh Circuit has "continued to recognize that 'irreparable harm is especially likely in a trademark case because of the difficulty of quantifying the likely effect on a brand of a nontrivial period of consumer confusion (and the interval between the filing of a trademark infringement complaint and final judgment is sure not to be trivial).'" *Luxottica Group, S.p.A. v. Light In The Box Ltd.*, 2016 U.S. Dist. LEXIS 144660, at *15 (N.D. Ill. 2016) (quoting *Kraft Foods Group Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 740 (7th Cir. 2013)). Defaulting Defendants' attempt to "piggyback" off MEC's efforts through the unauthorized use of the MONSTER ENERGY Trademarks has and continues to irreparably harm MEC through diminished goodwill and brand confidence, damage to MEC's reputation, loss of exclusivity, and loss of future sales. [14] at ¶¶ 24-28. The extent of the harm to MEC's reputation and the goodwill associated therewith and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defaulting Defendants' infringing activities through injunctive relief. *Trans Union LLC v. Credit Research, Inc.*, 142 F. Supp. 2d 1029, 1046 (N.D. Ill. 2001).

### B. The Balancing of Harms Tips in MEC's Favor and Issuance Is in the Public Interest

As willful infringers, Defaulting Defendants are entitled to little equitable consideration. There is no harm to the defendant to being enjoined from violating the law, and the public interest is served by eliminating potential consumer confusion. *River Light V, L.P. and Tory Burch LLC v. Zhangyali, et al.,* 2016 U.S. Dist. LEXIS 111301, at *13-14 (N.D. Ill. Aug. 22, 2016).

14

If Defaulting Defendants' infringement continues, MEC will lose potential profits and risk consumers associating Defaulting Defendants' inferior Unauthorized Monster Energy Products with MEC. *See Coach, Inc. v. 3D Designers Inspirations*, 70 F. Supp. 3d 942, 950 (C.D. Ill. 2014). On the other hand, a permanent injunction may only harm Defaulting Defendants' profits if it is forced to stop selling Unauthorized Monster Energy Products, but Defaulting Defendants "never had a legal right to profit from such counterfeiting." *Id*. Additionally, "the monetary benefits that [Defaulting] Defendants receive from their actions are not benefits to be protected from injury." *MetroPCS*, 215 F. Supp. 3d at 640 (citations omitted). Finally, "the public interest lies in favor of upholding property interests in trademarks and preventing consumer confusion." *MetroPCS*, 215 F. Supp. 3d at 640 (citations omitted). Accordingly, a permanent injunction against Defaulting Defendants is appropriate.

## CONCLUSION

MEC respectfully requests that the Court enter default and default judgment against each Defaulting Defendant, award two hundred thousand dollars ($200,000) per Defaulting Defendant for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c), award one hundred thousand dollars ($100,000) per Defaulting Defendant for willful copyright infringement pursuant to 17 U.S.C. § 504(c), and enter a permanent injunction order prohibiting Defaulting Defendants from selling Unauthorized Monster Energy Products, using the MONSTER ENERGY Trademarks without authorization, and reproducing, distributing copies of, making derivative works of, or publicly displaying the Monster Energy Copyrighted Design, permanently transferring the domain names used by Defaulting Defendants to sell such products to MEC, and transferring all assets in Defaulting Defendants' financial accounts to MEC.

Dated this 25th day of June 2020.	Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Allyson M. Martin
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
amartin@gbc.law

*Attorneys for Plaintiff Monster Energy Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 25th day of June 2020, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, I will electronically publish the documents on a website to which the Domain Names that have been transferred to MEC's control now redirect, and I will send an e-mail to the e-mail addresses identified in Exhibits 3 and 4 to the Declaration of Bruce Kingsland and any e-mail addresses provided for Defendants by third parties that includes a link to said website.

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Allyson M. Martin
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
amartin@gbc.law

*Attorneys for Plaintiff Monster Energy Company*